## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| GEORGE N. MURR, Derivatively On Behalf Of Nominal Defendant MOLSON COORS BREWING COMPANY,<br><br>         Plaintiff,<br>    v.<br><br>PETER H. COORS, PETER J. COORS, GEOFFREY E. MOLSON, ANDREW T. MOLSON, MARK R. HUNTER, BETTY K. DEVITA, MARY LYNN FERGUSON-MCHUGH, FRANKLIN W. HOBBS, IAIN J.G. NAPIER, DOUGLAS D. TOUGH, LOUIS VACHON, ROGER G. EATON, H. SANFORD RILEY, CHARLES M. HERINGTON, and TRACEY I. JOUBERT,<br>         Defendants,<br><br>MOLSON COORS BREWING COMPANY,<br><br>         Nominal Defendant. | Case No: 1:19-cv-01379<br><br><br><br><br>JURY TRIAL DEMANDED |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1.  Plaintiff George N. Murr, by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Molson Coors Brewing Company ("Molson Coors" or the "Company"), against members of its Board of Directors (the "Board") and certain officers seeking to remedy defendants' breaches of fiduciary duties. All facts relating to plaintiff and his own acts are pled on personal knowledge, while other facts are pled upon information and belief.

**NATURE OF THE ACTION**

2. Molson Coors is one of the world's largest brewers and have a diverse portfolio of owned and partner brands, including global priority brands *Blue Moon, Coors Banquet, Coors Light, Miller Genuine Draft, Miller Lite,* and *Staropramen,* regional champion brands *Carling,* *Molson Canadian* and other leading country-specific brands, as well as craft and specialty beers such as *Creemore Springs*, *Cobra*, *Doom Bar, Henry's Hard* and *Leinenkugel's*. In February 2005, Adolph Coors Company merged with Molson Inc. Upon completion of the merger, Adolph Coors Company changed its name to Molson Coors Brewing Company.

3. On February 12, 2019, Molson Coors reported for the first time that its publicly-filed consolidated financial reports were materially in error and should no longer be relied upon. As a result, Molson Coors' financial reporting for 2016 and 2017 would be restated.

4. The individual defendants named herein were responsible for the accurate reporting of Molson Coor's financial reports as members of management and/or the Board's audit committee. As a result of their fiduciary breach, the individual defendants are responsible for the damages that are related to the financial restatement of Molson Coors for years 2016 and 2017.

5. This action seeks to recoup losses Molson Coors has already sustained and will continue to sustain in connection with the wrongdoing alleged herein, the internal investigation, financial restatement, related securities litigation, and all other related damages.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

7.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, a citizen of Colorado, or an individual with sufficient minimum contacts with this District so as to render the exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because during the wrongdoing alleged herein Molson Coors conducted in this District, one or more of the individual defendants resides in or maintains an office in this District, a substantial portion of the transactions complained of herein occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9.     Plaintiff is a shareholder of Molson Coors and has continuously held Molson Coors common stock since April 2017.  Plaintiff is a citizen of California.

10.     Nominal Defendant Molson Coors manufactures and sells beer and other beverage products in the United States, Canada, Europe, and internationally.  The Company is a Delaware corporation.  The principal executive offices of the Company's U.S. segment are located at 1801 California Street, Suite 4600, Denver, Colorado.  Nominal Defendant Molson Coors is a citizen of Delaware and Colorado.

11.     Defendant Peter H. Coors has been a Director of Molson Coors since 2005 and Chairman of the Board since 2017.  Peter H. Coors currently serves as the Company's Chief Customer Relations Officer.  Peter H. Coors was the Chairman and Chief Executive Officer of Coors Brewing Company.  Upon information and belief, Peter H. Coors is a citizen of Colorado.

12.     Defendant Peter J. Coors has been a Director of Molson Coors since 2015 and is the Senior Manager of Quality Assurance for MillerCoors LLC.  Prior to his current role, Peter J.

Coors has held various management positions within the Company. Peter J. Coors is the son of Peter H. Coors.  Upon information and belief, Peter J. Coors is a citizen of Colorado.

13.     Defendant Geoffrey E. Molson has been as a Director of the Company since 2009 and as Vice Chairman of the Board since May 2017.  Prior to his current role, Geoffrey Molson served as the Company's chairman from June 2015 to May 2017. Upon information and belief, Molson is a citizen of Colorado.

14.     Defendant Andrew T. Molson has been a Director of the Company since 2005 and is the brother of Geoffrey Molson.  Upon information and belief, Andrew Molson is a citizen of Canada.

15.     Defendant Mark R. Hunter ("Hunter") has been a Director since 2015 and has served as the Chief Executive Officer ("CEO") and President of Molson Coors since January1, 2015.  Upon information and belief, Hunter is a citizen of Colorado.

16.     Defendant Betty K. DeVita ("DeVita") has been a Director since 2016.  DeVita serves on the Molson Coors' Audit Committee.  Upon information and belief, DeVita is a citizen of Florida.

17.     Defendant Mary Lynn Ferguson-McHugh ("Ferguson-McHugh") has been a Director for Molson Coors since 2015.  Upon information and belief, Ferguson-McHugh is a citizen of Ohio.

18.     Defendant Franklin W. Hobbs ("Hobbs") has been a Molson Coors Director since 2005.  Hobbs serves on the Company's Audit Committee.  Upon information and belief, Hobbs is a citizen of New York.

19.     Defendant Iain J.G. Napier ("Napier") has been a Molson Coors Director since 2008.  Upon information and belief, Napier is a citizen of the United Kingdom.

20.     Defendant Douglas D. Tough ("Tough") has been a Molson Coors Director since 2012. Upon information and belief, Tough is a citizen of Florida.

21.     Defendant Louis Vachon ("Vachon") has been a Molson Coors Director since 2012.  Upon information and belief, Vachon is a citizen of Vermont.

22.     Defendant Roger G. Eaton ("Eaton") has been a Molson Coors Director since 2012.  Eaton serves on the Company's Audit Committee.  Upon information and belief, Eaton is a citizen of Texas.

23.     Defendant H. Sanford Riley ("Riley") has been a Molson Coors Director since 2005.  Upon information and belief, Riley is a citizen of Canada.

24.     Defendant Charles M. Herington ("Herington") has been a Molson Coors Director since 2005.  Herington serves on the Company's Audit Committee. Upon information and belief, Herington is a citizen of Florida.

25.     Defendant Tracey I. Joubert ("Joubert") has been Molson Coors Chief Financial Officer ("CFO") since November 17, 2016.  Upon information and belief, Joubert is a citizen of Wisconsin.

26.     Defendants Peter H. Coors, Peter J. Coors, Geoffrey Molson, Andrew Molson, Hunter, DeVita, Ferguson-McHugh, Hobbs, Napier, Tough. Vachon, Eaton, Riley, Herrington, and Joubert are referred to as the "Individual Defendants.

27.     Defendants Peter H. Coors, Peter J. Coors, Geoffrey Molson, Andrew Molson, Hunter, DeVita, Ferguson-McHugh, Hobbs, Napier, Tough. Vachon, Eaton, Riley, and Herrington are referred to as the "Director Defendants.

28.     Defendants Eaton, DeVita, Hobbs, and Herington are referred to herein as the "Audit Committee Defendants."

29.     Defendants Vachon, Napier, and Hobbs are referred to as the "Finance Committee Defendants."

30.     Defendants Peter H. Coors, Peter J. Corrs, Geoffrey Molson and Hunter are referred to as the "Officer Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers, directors, and/or fiduciaries of Molson Coors and because of their ability to control the business and corporate affairs of Molson Coors, all of the Individual Defendants owed Molson Coors and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Molson Coors in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of Molson Coors and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interests or benefit.  Each director and officer of the Company owed to Molson Coors and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Molson Coors, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial, and directorial positions with Molson Coors, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

33.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the Individual Defendants were required to, *inter alia*:

a.      Exercise good faith to ensure that the affairs of the Company
were conducted in an efficient, business-like manner so as to
make it possible to provide the highest quality performance of its
business;

b.      Exercise good faith to ensure that the Company was operated in
a diligent, honest and prudent manner, and complied with all
applicable federal and state laws, rules, regulations and
requirements, as well as all contractual obligations, including
acting only within the scope of its legal authority;

c.      Exercise good faith to ensure that the Company's
communications with the public and with shareholders were
made with due candor in a timely and complete fashion; and

d.      When put on notice of problems with the Company's business
practices and operations, exercise good faith in taking
appropriate action to correct the misconduct and prevent its
recurrence.

34.     By reason of their positions as members of the Audit Committee, defendants
Eaton, DeVita, Herington, and Hobbs, owed Molson Coors and its shareholders fiduciary
obligations of good faith, loyalty, and candor, and were required to use their utmost ability to
control and manage Molson Coors in a fair, just, honest, and equitable manner. The Audit
Committee Charter imposed specific duties and obligations to oversee the integrity of the
Company's financial reporting and its financial statements. In particular, the Audit Committee
members were obligated to:

(a)     Oversee and monitor the activities of Company management and outside
auditors with respect to the Company's accounting and financial reporting
processes;

(b)     Take direct responsibility for the appointment, compensation, retention
and oversight of the work of  any registered public accounting firm
engaged (including resolution of disagreements between management and
the auditor regarding financial reporting) for the purpose of preparing or
issuing audit reports or performing other audit, review or attest services
and recommend the selection of the outside auditors to the Board and
stockholders and ensure that each such registered public accounting firm

reports directly to the Audit Committee; that each such registered public accounting firm reports directly to the Audit Committee;

(c)     Pre-approve audit and non-audit services provided to the Company by the Company's outside auditors either (i) before the auditors are engaged by the Company for such services or (ii) pursuant to any pre-approval policies and procedures established by the Audit Committee, provided that the Audit Committee is informed of each specific service, and approve the engagement of any other registered accounting firm for any purpose;

(d)     Review the proposed scope and plan of the annual audits of the financial statements and internal control over financial reporting;

(e)     Direct the Company's outside auditors to review the Company's interim financial statements included in Quarterly Reports on Form 10-Q prior to the filing of such reports with the SEC;

(f)     Review and discuss with management and the Company's auditors the Company's annual audited financial statements and quarterly financial statements;

(g)     Review with management, before release, the Company's audited financial statements and Management's Discussion and Analysis included in the Company's Annual Report on Form 10-K and recommend to the Board whether the audited financial statements should be included in the Company's Annual Report on Form 10-K;

(h)     Review and discuss with the Company's outside auditors the Company's audited financial statements and audit findings and discuss with the outside auditors those matters required to be discussed by Statement of Auditing Standards No. 114, as amended, or such successor standard as may be promulgated by the Public Company Accounting Oversight Board ("PCAOB");

(i)     Ensure the receipt from the Company's outside auditors of a formal written statement delineating all relationships between the outside auditor and the Company in accordance with applicable requirements of the PCAOB and actively engage in a dialogue with the outside auditors with respect to any disclosed relationships or services that may impact the objectivity and independence of the auditors;

(j)     Take appropriate action to oversee the independence of the outside auditors;

(k)     Review with the Company's outside auditors and management the adequacy of the Company's internal financial controls and reporting systems;

(l)     Review the outside auditors' management letter (if any) and consider any comments made by the outside auditors with respect to improvements in the internal accounting controls of the Company, consider any corrective action recommended by the outside auditors, and review any corrective action taken by management;

(m)     Provide a report in the Company's annual report on Form 10-K or proxy statement as required by SEC regulations;

|     |     |
| --- | --- |
| (n) | Establish procedures for the receipt, retention, and treatment of complaints received by the Company regarding accounting, internal accounting controls, or auditing matters; |
| (o) | Establish procedures for the confidential, anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters; |
| (p) | Review and approve related party transactions for potential conflicts of interest; |
| (q) | Review any requests for waivers of compliance with the Company's Code of Business Conduct and Ethics; |
| (r) | Conduct an annual review of the Audit Committee's performance, annually |
| (s) | Provide a summary verbal report of Audit Committee activity since the last meeting of the Board at each regular meeting of the Board; |
| (t) | Establish and review reporting procedures for accounting matters; and |
| (u) | Review compliance and risk assessment reports from management. |

35.     By reason of their positions as members of the Finance Committee, defendants Vachon, Napier, and Hobbs, owed Molson Coors and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Molson Coors in a fair, just, honest, and equitable manner. The Finance Committee Charter imposed specific duties and obligations to oversee the integrity of the Company's financial reporting and its financial statements. In particular, the Finance Committee members were obligated to:

|     |     |
| --- | --- |
| (a) | Monitor the Company's financial, hedging and investment policies and strategies, as well as the Company's tax strategies and legal entity structure; |
| (b) | Monitor the Company's financial condition and its requirements for funds, including with respect to acquisitions and divestitures; |
| (c) | Monitor investment performance and funding of the Company's pension funds; provided, that nothing herein shall impose on the Committee any fiduciary duties with regard to such pension funds or authority or responsibility for underlying investment decisions by such pension funds; and |
| (d) | Monitor the Company's debt portfolio, interest rate risk and expense management, credit facilities and liquidity. |

## **SUBSTANTIVE ALLEGATIONS**

36.     Coors was incorporated in June 1913 under the laws of the state of Colorado.  In October 2003, Coors merged with and into Adolph Coors Company, a Delaware corporation.  In February 2005, Adolph Coors Company merged with Molson Inc.  Upon completion of the merger, Adolph Coors Company changed its name to Molson Coors Brewing Company.

37.     On February 14, 2017, Molson Coors filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2016 (the "2016 10-K").  The 2016 10-K was signed by the Individual Defendants.  The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Hunter and Joubert attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2016 10-K stated that the Company's internal control over financial reporting was effective, excluding the internal control over financial reporting at its recently acquired stake in MillerCoors LLC.

38.     The 2016 10-K provided the Company's consolidated statement of operations, which reported comprehensive income attributable to Molson Coors as $2.125 billion for the period covered by the 2016 10-K.  The 2016 10-K stated, in relevant part:

| | For the Years Ended | | |
| --- | --- | --- | --- |
| | December 31, 2016 | December 31, 2015 | December 31, 2014 |
| **Sales** | $6,597.4 | 5127.4 | 5927.5 |
| **Excise taxes** | (1, 712.4) | (1,559.9) | (1,781.2) |
| **Net Sales** | 4,885.0 | 3,567.5 | 4,146.3 |
| **Cost of goods sold** | (3,003.1) | (2,163.5) | (2,493.3) |
| **Gross Profit** | 1,881.9 | 1,404.0 | 1,653.0 |
| **Marketing, general and administrative expenses** | (1,597.3) | (1,051.8) | (1,163.9) |
| **Special items, net** | 2,523.9 | (346.7) | (324.4) |
| **Equity income in MillerCoors** | 500.9 | 516.3 | 561.8 |

| | | | | | |
|---|---|---|---|---|---|
| **Operating income (loss)** | | 3,309.4 | | 521.8 | 726.5 |
| **Other income (expense), net** | | | | | |
| **Interest expense** | | (271.6) | | (120.3) | (145.0) |
| **Interest income** | | 27.2 | | 8.3 | 11.3 |
| **Other income (expense), net** | | (29.7) | | 0.9 | (6.5) |
| **Total other income (expense), net** | | (274.1) | | (111.1) | (140.2) |
| **Income (loss) from continuing operations before income taxes** | | 3,035.3 | | 410.7 | 586.3 |
| **Income tax benefit (expense)** | | (1,050.7) | | (51.8) | (69.0) |
| **Net income (loss) from continuing operations** | | 1,984.6 | | 358.9 | 517.3 |
| **Income (loss) from discontinued operations, net of tax** | | (2.8) | | 3.9 | 0.5 |
| **Net income (loss) including non-controlling interests** | | 1,918 | | 362.8 | 517.8 |
| **Net (income) loss attributable to non-controlling interests** | | (5.9) | | (3.3) | (3.8) |
| **Net income (loss) attributable to Molson Coors Brewing Company** | $ | 1,975.9 | $ | 359.5 | $ 514.0 |
| | | | | | |
| **Basic net income (loss) attributable to Molson Coors Brewing Company per share:** | | | | | |
| **From continuing operations** | $ | 9.33 | $ | 1.92 | $ 2.78 |
| **From discontinued operations** | | (0.01) | | 0.02 | |
| **Basic net income (loss) attributable to Molson Coors Brewing Company per share** | $ | 9.32 | $ | 1.94 | $ 2.78 |
| | | | | | |
| **Diluted net income (loss) attributable to Molson Coors Brewing Company per share:** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| From continuing operations | $ | 9.27 | $ | 1.91 | $ | 2.76 |
| From discontinued operations | | (0.01) | | 0.02 | | |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share | $ | 9.26 | $ | 1.93 | $ | 2.76 |
| | | | | | | |
| Weighted-average shares-basic | | 212.0 | | 185.3 | | 184.9 |
| Weighted-average shares-diluted | | 213.4 | | 186.4 | | 186.1 |
| Amounts attributable to Molson Coors Brewing Company | | | | | | |
| Net income (loss) from continuing operations | | $1,978.7 | | $355.6 | | $513.5 |
| Income (loss) from discontinued operations, net of tax | | (2.8) | | 3.9 | | 0.5 |
| Net income (loss) attributable to Molson Coors Brewing [] | | $1,975.9 | | 359.5 | | 514.0 |

|  | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2016 | December 31, 2015 | December 31, 2014 |
| Net income (loss) including non-controlling interests | $      1,981.8 | $      362.8 | $      517.8 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | (234.4) | (918.4) | (849.8) |
| Unrealized gain (loss) on derivative instruments | 9.7 | 20.9 | 7.0 |
| Reclassification of derivative (gain) loss to income | (3.0) | (5.4) | 2.3 |
| Pension and other postretirement benefit adjustments | 62.3 | 33.6 | (136.8) |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income | 31.4 | 37.5 | 26.2 |

| | | | |
|---|---|---|---|
| **Reclassification of historical share of MillerCoors' AOCI loss** | 258.2 | | |
| **Ownership; share of unconsolidated subsidiaries' other comprehensive income (loss)** | 22.3 | 34.3 | (102.2) |
| **Total other comprehensive income (loss), net of tax** | 146.5 | (797.5) | (1,503.3) |
| **Comprehensive income (loss)** | 2,128.3 | (434.7) | (535.5) |
| **Comprehensive (income) loss attributable to non-controlling interests** | (3.0) | (2.3) | (3.8) |
| **Comprehensive income (loss) attributable to Molson Coors Brewing Company** | $    2.125.3 | $    (437.0) | $    (539.3) |

39.     On February 14, 2018, Molson Coors filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K was signed by all the Individual Defendants except Riley. The 2017 10-K contained signed SOX certifications by Hunter and Joubert attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2017 10-K stated that the Company's internal control over financial reporting was effective as of December 31, 2017.

40.     The 2017 10-K provided the Company's consolidated statement of operations, which reported comprehensive income attributable to Molson Coors as $2.126 billion for the period covered by the 2017 10-K. The 2017 10-K stated, in relevant part:

| | For the Years Ended | | |
|---|---|---|---|
| | **December 31, 2017** | **December 31, 2016** | **December 31, 2015** |
| **Sales** | $    13,471.5 | $    6,597.4 | $    5,127.4 |
| **Excise taxes** | (2, 468.7) | (1,712.4) | (1,559.9) |
| **Net Sales** | 11,002.8 | 4,885.0 | 3,567.5 |
| **Cost of goods sold** | (6,217.2) | (2,987.5) | (2,131.6) |
| **Gross Profit** | 4,785.6 | 1,897.5 | 1,435.9 |

| | | | |
|---|---|---|---|
| **Marketing, general and administrative expenses** | (3,032.4) | (1,589.8) | (1,038.3) |
| **Special items, net** | (28.1) | 2,522.4 | (346.7) |
| **Equity income in MillerCoors** | -- | 500.9 | 516.3 |
| **Operating income (loss)** | 1,725.1 | 3,331.0 | 567.2 |
| **Other income (expense), net** | | | |
| **Interest expense** | (349.3) | (271.6) | (120.3) |
| **Interest income** | 6.0 | 27.2 | 8.3 |
| **Other income (expense), net** | (0.1) | (29.7) | 0.9 |
| **Total other income (expense), net** | (343.4) | (274.1) | (111.1) |
| **Income (loss) from continuing operations before income taxes** | 1,381.7 | 3,056.9 | 456.1 |
| **Income tax benefit (expense)** | 53.2 | (1,055.2) | (61.5) |
| **Net income (loss) from continuing operations** | 1,434.9 | 2,001.7 | 394.6 |
| **Income (loss) from discontinued operations, net of tax** | 1.5 | (2.8) | 3.9 |
| **Net income (loss) including non-controlling interests** | 1,436.4 | 1,998.9 | 398.5 |
| **Net (income) loss attributable to non-controlling interests** | (22.2) | (5.9) | (3.3) |
| **Net income (loss) attributable to Molson Coors Brewing Company** | $   1,414.2 | $   1,993.0 | $   395.2 |
| | | | |
| **Basic net income (loss) attributable to Molson Coors Brewing Company per share:** | | | |
| **From continuing operations** | $6.56 | $9.41 | $2.11 |
| **From discontinued operations** | 0.01 | (0.01) | 0.02 |
| **Basic net income (loss) attributable to Molson Coors Brewing Company per share** | $   6.57 | $   9.40 | $2.13 |
| | | | |
| **Diluted net income (loss) attributable to Molson Coors Brewing Company per share:** | | | |
| **From continuing operations** | $   6.52 | $   9.35 | $   2.10 |
| **From discontinued operations** | 0.01 | (0.01) | 0.02 |
| **Diluted net income (loss) attributable to Molson Coors Brewing Company per share** | $6.53 | $9.34 | $2.12 |
| | | | |
| **Weighted-average shares-basic** | 215.4 | 212.0 | 185.3 |
| **Weighted-average shares-diluted** | 216.5 | 213.4 | 186.4 |

| **Amounts attributable to Molson Coors Brewing Company** | | | | | |
|---|---|---|---|---|---|
| **Net income (loss) from continuing operations** | $ | 1,412.7 | $ | 1,995.8 | $ | 391.3 |
| **Income (loss) from discontinued operations, net of tax** | | 1.5 | | (2.8) | | 3.9 |
| **Net income (loss) attributable to Molson Coors Brewing Company** | $ | 1,414.2 | $ | 1,993.0 | $ | 395.2 |

| | **For Years Ended** | | |
|---|---|---|---|
| | **December 31, 2017** | **December 31, 2016** | **December 31, 2015** |
| Net income (loss) including non-controlling interests | $ 1,436.4 | $ 1,998.9 | $ 398.5 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | 686.7 | (234.4) | (918.4) |
| Unrealized gain (loss) on derivative and non-derivative financial instruments | (133.4) | 9.7 | 20.9 |
| Reclassification of derivative (gain) loss to income | 1.3 | (3.0) | (5.4) |
| Pension and other postretirement benefit adjustments | 145.7 | 53.8 | 19.3 |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income | 3.6 | 22.8 | 16.1 |
| Reclassification of historical share of MillerCoors' AOCI loss | -- | 258.2 | |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | 10.4 | 22.3 | 34.3 |
| Total other comprehensive income (loss), net of tax | 714.3 | 129.4 | (833.2) |
| Comprehensive income (loss) | 2,150.7 | 2,128.3 | (434.7) |
| Comprehensive income (loss) attributable to non-controlling interests | (24.7) | (3.0) | (2.3) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 2,126.0 | $ 2,125.3 | $ (437.0) |

41.     The statements referenced above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's

business and operations, which were known to the Individual Defendants or recklessly disregarded by them.  Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Molson Coors failed to properly reconcile the outside basis deferred income tax liability for Molson Coors' investment in its MillerCoors, LLC partnership; (ii) consequently, Molson Coors misreported net income in its consolidated financial statements for the fiscal years ending December 31, 2016 and December 31, 2017, resulting in an overall downward revision to net income; (iii) Molson Coors lacked adequate internal controls over financial reporting; and (iv) as a result, Defendants' statements about Molson Coors' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

42.     On February 12, 2019, before the market opened, Molson Coors announced that its "previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon."  The Company's announcement stated, in relevant part:

> On February 8, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of Molson Coors Brewing Company (the "Company"), after discussion with management of the Company and PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, concluded that the *Company's previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon*.
>
> *As part of preparing its 2018 financial statements, the Company identified errors in the accounting for income taxes related to the deferred tax liabilities for its partnership in MillerCoors, LLC ("MillerCoors").  Upon the closing of the acquisition of the remaining interest in MillerCoors (the "Acquisition") in the fourth quarter of 2016 and completion of the related deferred income tax calculations, the Company did not reconcile the outside basis deferred income tax liability for the investment in the partnership to the book-tax differences in the underlying assets and liabilities within the partnership.*  As a result of

completing this reconciliation as part of preparing its 2018 consolidated financial statements, the Company identified a difference related to historical financial statements and concluded that the previously issued 2017 and 2016 consolidated financial statements were misstated. ***Accordingly, the Company is restating its consolidated financial statements as of and for the year ended December 31, 2016 to increase its deferred tax liabilities and deferred tax expense by $399.1 million, with a corresponding decrease in net income and earnings per share. The Company's consolidated financial statements as of and for the year ended December 31, 2017 are also being restated to reflect the revaluation of such deferred liabilities due to the U.S. Tax Cuts and Job Act of 2017 and to correct further insignificant income tax errors resulting in a decrease to deferred tax liabilities and deferred tax expense of $151.4 million, resulting in corresponding increases to the Company's net income and earnings per share. These adjustments resulted in an aggregate $247.7 million increase to the Company's deferred tax liabilities and corresponding decrease in retained earnings and total equity as of December 31, 2017.***

\* \* \*

***In connection with the restatement, management of the Company has determined that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2018 relating to the design and maintenance of effective controls over the completeness and accuracy of the accounting for and disclosure of the income tax effects of acquired partnership interests***. Specifically, the Company did not design appropriate controls to identify and reconcile deferred income taxes associated with the accounting for acquired partnership interests. As a result, the Company's Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective as of December 31, 2018, and the Company's management has concluded that its internal control over financial reporting was not effective as of December 31, 2018.

The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP.

(Emphasis added.)

43.     That same day, the Company filed restated consolidated financial statements for the fiscal years ended December 31, 2016 and December 31, 2017 in the Company's annual report for the fiscal year ending December 31, 2018 (the "2018 10-K") signed by all of the Individual Defendants. The Company's 2018 10-K stated, in relevant part:

| | For Years Ended | | |
|---|---|---|---|
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Net income (loss) including non-controlling interests | $ 1,134.6 | $ 1,587.8 | $ 1,599.8 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | (359.0) | -- | -- |
| Reclassification of cumulative translation adjustment to income | 6.0 | -- | -- |
| Unrealized gain (loss) on derivative and non-derivative financial instruments | 10.9 | (133.4) | 9.7 |
| Reclassification of derivative (gain) loss to income | 2.5 | 1.3 | (3.0) |
| Pension and other postretirement benefit adjustments | 43.5 | 145.7 | 53.8 |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income and settlement | 4.9 | 3.6 | 22.8 |
| Reclassification of historical share of MillerCoors' AOCI loss | --- | --- | 258.2 |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | (0.8) | 10.4 | 22.3 |
| Total other comprehensive income (loss), net of tax | (292.0) | 714.3 | 129.4 |
| Comprehensive income (loss) | 842.6 | 2,302.1 | 1,729.2 |
| Comprehensive (income) loss attributable to non-controlling interests | (16.1) | (24.7) | (3.0) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 826.5 | $ 2,277.4 | $ 1,726.2 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Sales | $ 13,338.0 | $ 13,471.5 | $ 6,597.4 |
| Excise taxes | (2,568.4) | (2,468.7) | (1,712.4) |
| Net Sales | 10,769.6 | 11,002.8 | 4,885.0 |
| Cost of goods sold | (6,584.8) | (6,236.7) | (2,999.0) |
| Gross profit | 4,184.8 | 4,766.1 | 1,886.0 |
| Marketing, general and administrative expenses | (2,802.7) | (3,052.0) | (1,597.2) |

| | | | | | |
|---|---|---|---|---|---|
| Special items, net | | 249.7 | | (36.4) | 2,532.9 |
| Equity income in MillerCoors | | --- | | --- | 500.9 |
| Operating income (loss) | | 1,631.8 | | 1,677.7 | 3,322.6 |
| Other income (expense), net | | | | | |
| Interest expense | | (306.2) | | (349.3) | (271.6) |
| Interest income | | 8.0 | | 6.0 | 27.2 |
| Other pension and postretirement benefits (costs), net | | 38.2 | | 47.4 | 8.4 |
| Other income (expense), net | | (12.0) | | 1.4 | (32.5) |
| Total other income (expense), net | | (272.0) | | (294.5) | (268.5) |
| Income (loss) before income taxes | | 1,359.8 | | 1,383.2 | 3,054.1 |
| Income tax benefit (expense) | | (225.2) | | 204.6 | (1,454.3) |
| Net income (loss) | | 1,134.6 | | 1,587.8 | 1,599.8 |
| Net (income) loss attributable to non-controlling interests | | (18.1) | | (22.2) | (5.9) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ | 1,116.5 | $ 1,565.6 | $ | 1,593.9 |
| | | | | | |
| Net income (loss) attributable to Molson Coors Brewing Company per share: | | | | | |
| Basic | $ | 5.17 | $ 7.27 | $ | 7.52 |
| Diluted | $ | 5.15 | $ 7.23 | $ | 7.47 |
| | | | | | |
| Weighted-average shares outstanding: | | | | | |
| Basic | | 216.0 | | 215.4 | 212.0 |

44.     On this news, Molson Coors' stock price fell $6.17 per share, or 9.44%, to close at $59.19 per share on February 12, 2019. The Company's stock price has not recovered.

45.     The 2018 10-K further reported that the Audit Committee working together with management would consider what if any changes would be made to Molson Coors internal controls.

## DAMAGES TO THE COMPANY

46.     As a direct and proximate result of the Individual Defendants' conduct, Molson Coors has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

- Legal costs incurred and to be incurred due to the wrongdoing alleged herein and defending the Company and defendants against a wide variety of lawsuits;

- Loss of access to hundreds of millions of dollars in credit facilities due to the wrongdoing;

- Loss of market capital;

- Loss of ability to access credit markets on favorable terms;

- Costs incurred and to be incurred due to the retention of outside advisors to assist in the internal investigations;

- Cost incurred as a result of bring the Company into compliance with SEC requirements; and

- Incentive compensation wrongly paid to defendants as a result of the manipulated financial results.

47.     In addition, Molson Coors's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company has still not held any of the Individual Defendants accountable for their intentional illegal acts.  As a result, the credibility and motives of management are in serious doubt.

48.     The actions complained of herein have irreparably damaged Molson Coors's corporate image and goodwill.  For at least the foreseeable future, Molson Coors will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Molson Coors's ability to raise equity capital or debt on favorable terms has already been impaired and will be in the future.

## DERIVATIVE AND DEMAND ALLEGATIONS

49.     Plaintiff brings this action derivatively in the right and for the benefit of Molson Coors to redress injuries suffered by Molson Coors as a direct result of the breaches of fiduciary duty by the Individual Defendants detailed herein.  Molson Coors is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

50.     Plaintiff will adequately and fairly represent the interests of Molson Coors in enforcing and prosecuting its rights.

51.     Plaintiff has continuously been a shareholder of Molson Coors at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Molson Coors shareholder.

52.     Plaintiff will adequately and fairly represent the interests of Molson Coors and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

53.     At the time this Action was commenced, the Board consisted of the following fourteen (14) directors: Peter H. Coors, Peter J. Coors, Geoffrey Molson, Andrew Molson, Hunter, DeVita, Ferguson-McHugh, Herington, Tough, Hobbs, Riley, Napier, Vachon, and Eaton.

54.     Plaintiff has not made a demand on the Board to bring suit asserting the claims against the Individual Defendants, because such a demand would be futile, wasteful and a useless act.

55.     The directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this lawsuit for the following reasons.

56.     Demand is futile as to Peter H. Coors, Peter J. Coors, Geoffrey Molson, Andrew Molson, and Hunter because, according to the Company's April 5, 2018 proxy statement filed with the SEC, the Board has determined that Peter H. Coors, Peter J. Coors, Geoffrey Molson, Andrew Molson, and Hunter are not independent.

57.     Demand is further futile as to Hunter because his primary occupation is his employment with Molson-Coors as its President and CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.

58.     Demand is also futile because of Peter H. Coors, Peter J. Coors, and Geoffrey Molson's current and/or prior service as management of Molson Coors (or its wholly-owned subsidiaries) during the relevant time.

59.     The Audit Committee Defendants (Eaton, DeVita, Herington, and Hobbs) served on the Company's Audit Committee.  Pursuant to the Audit Charter, the members of the Audit Committee were and are responsible for, inter alia, reviewing the Company's annual and quarterly financial reports, and press releases, and reviewing the integrity of the Company's internal controls.  The Audit Committee Defendants breached their fiduciary duties of due care, loyalty and good faith because the Audit Committee, inter alia, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures, and caused the above-discussed internal control failures.  Therefore, defendants Eaton, DeVita, Hobbs, and Herington each face a substantial likelihood of liability for their breach of fiduciary duties and demand upon them would be futile.

60.     The Finance Committee Defendants (Vachon, Napier, and Hobbs) served on the Company's Finance Committee.  Pursuant to the Finance Charter, the members of the Finance Committee were and are responsible for, inter alia, reviewing the Company's financial, hedging,

and invesrtment policies as well as the Company's tax strategies. The Finance Committee Defendants breached their fiduciary duties of due care, loyalty and good faith because the Finance Committee, *inter alia*, failed to account for Molson Coors deferred tax liabilities, failed to assure that appropriate internal controls were in place for the accurate reporting of tax liabilities, and wrongfully allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures, and caused the above-discussed internal control failures. Therefore, defendants Vachon, Napier, and Hobbs each face a substantial likelihood of liability for their breach of fiduciary duties and demand upon them would be futile.

61.     Demand is excused as to the entire Board because the majority of Director Defendants face a substantial likelihood of liability due to the facts alleged herein. Each of these directors were or should have been aware of the financial reporting improprieties and lack of appropriate internal controls, yet they did nothing to bring such problems to light.

62.     As particularized herein, to properly prosecute this lawsuit, the Director Defendants would have to sue themselves and the other defendants, requiring them to expose themselves and their comrades to tens of millions of dollars in civil liability and/or sanctions. This they have refused to do thus far, and will not do in the future. A majority of the Director Defendants are exposed to potential liability for breaching their fiduciary duties by participating in the concealment of important information regarding Aveo's core business and permitting the Company to issue repeated disclosures that they knew to be inaccurate and misleading. Thus, demand on the Director Defendants is futile.

63.     Plaintiff has not made any demand on the other shareholders of Molson Coors to institute this action since such demand would be a futile and useless act for at least the following reasons:

a.  Molson Coors is a publicly held company with millions of shares outstanding and thousands of shareholders;

b.  making demand on such a number of shareholders would be impossible for Plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

c.  making demand on all shareholders would force Plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I
**Against All Individual Defendants For Breach Of Fiduciary Duty**

64.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

65.    As alleged in detail herein, each of the Individual Defendants had a duty to ensure that Molson Coors disseminated accurate, truthful and complete information to its shareholders.

66.    The Individual Defendants violated their non-exculpable fiduciary duties of loyalty and good faith by causing or allowing the Company to disseminate to Molson Coors' shareholders materially misleading and inaccurate information through, inter alia, SEC filings and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

67.    As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's tax accounting and financial controls were maintained in good faith, and, when put on notice of problems with the Company's business practices and operations by customers, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

68.     The Individual Defendants willfully ignored the obvious and pervasive problems with Molson Coors' tax accounting and internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

69.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Molson Coors, for which they are legally responsible. In particular, the Individual Defendants abused their positions of authority by causing or allowing Molson Coors to misrepresent material facts regarding its financial conduct and business prospects.

70.     The Individual Defendants had a duty to Molson Coors and its shareholders to prudently supervise, manage, and control the operations, business and internal financial accounting, and disclosure of Molson Coors.

71.     The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Molson Coors in a manner consistent with the duties imposed upon them by the law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence, and candor in the management and administration of Molson Coors' affairs and in the use and preservation of Molson Coors' assets.

72.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II
### Against All Individual Defendants For Unjust Enrichment

73.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Molson Coors.

75.     Plaintiff, as a shareholder and representative of Molson Coors, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

76.     Plaintiff, on behalf of Molson Coors, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

Plaintiff demands judgment in the Company's favor against all defendants as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of Molson Coors and that Plaintiff is an adequate representative of the Company;

B.     Declaring that the Individual Defendants have breached their fiduciary duties to Molson Coors;

C.     Determining and awarding to Molson Coors the damages sustained by it as a result of the violations set forth above by each of the defendants, jointly and severally, together with interest thereon;

D.     Directing Molson Coors and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Molson Coors and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's By-Laws or Articles of Incorporation; and the actions as may be necessary to ensure proper Corporate Governance Policies:

(a)     a proposal to strengthen the Company's disclosure and financial controls;

(b)     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(c)     provision to permit the shareholders of Molson Coors to nominate at least three candidates for election to the Board; and

(d)     a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

E.     Determining and awarding to Molson Coors exemplary damages in an amount necessary to punish defendants and to make an example of defendants to the community according to proof at trial;

F.     Awarding Molson Coors restitution from defendants, and each of them;

G.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

H.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: May 14, 2019

**BURG SIMPSON ELDREDGE HERSH & JARDINE PC**

*s/ Meghan C. Quinlivan*
MEGHAN C. QUINLIVAN
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527
Email: MQuinlivan@burgsimpson.com

Matthew M. Houston
Benjamin Sachs-Michaels
**GLANCY PRONGAY & MURRAY LLP**
712 Fifth Avenue, 31st Floor
 New York, NY 10019
(212) 935-7400
Email: mhouston@glancylaw.com

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150

*Counsel for Plaintiff George N. Murr*

## VERIFICATION

I, George N. Murr, do hereby verify that I am a holder of common stock of Molson Coors Brewing Company, and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint and all of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date:

_George N. Murr_
George N. Murr